William **COLDICOTT**, Plaintiff,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES**, Defendant.

No. CIV–83–1354E.

United States District Court, W.D. New York.

June 3, 1985.

—————

Gerald P. Seipp, Buffalo, N.Y., for plaintiff.

C. Donald O'Connor, Asst. U.S. Atty., Buffalo, N.Y., for defendant.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

Presently before the Court is a petition by plaintiff's attorney ("the attorney")[1] for fees pursuant to 42 U.S.C. § 406(b), section 206(b) of the Social Security Act [the "Act"]. While the somewhat unusual facts of the case raise questions concerning the application of that section of the Act, such need not be resolved for present purposes.

Following termination by the Secretary of his disability benefits under the Act, plaintiff had requested and received a hearing before an Administrative Law Judge ("the ALJ") April 18, 1983. Plaintiff had been assisted at the hearing by a National Service Officer with the Disabled American Veterans. On June 7, 1983 the ALJ ruled that plaintiff was no longer disabled for purposes of the Act and plaintiff's request for review of the ALJ's decision was denied October 19, 1983 making final the decision of the Secretary.

Plaintiff then had retained the attorney in order to obtain this Court's review of the decision and a complaint had been filed November 30, 1983. The Secretary had answered April 2, 1984 denying the Complaint's relevant allegations. Subsequently, however, the Appeals Council of the Social Security Administration, recognizing that certain medical evidence had not been adequately considered, on its own initiative had requested a remand for the purpose of reinstating plaintiff's benefits. This Court had ordered the matter remanded October 18, 1984 pursuant to a Stipulation For Remand signed by the attorney and counsel for the Secretary. The remand had not been prompted or brought about by any particular action by the attorney other than the preparation and signing and filing of the Complaint.

Upon remand plaintiff had been awarded slightly more than $20,000 in back benefits.[2] On January 24th plaintiff's attorney filed with this Court a petition seeking $5,155.15 as his fee pursuant to a signed retainer agreement by virtue of which plaintiff had promised to pay for the services rendered in this Court fees equal to 25% of any award of back benefits. Contemporaneously this Court had been made aware of certain questions surrounding the retainer agreement and the application for fees. Plaintiff had telephoned on at least two occasions and had followed such by a letter dated January 19th and another which was received January 30th. The general tenor of the calls and letters was that plaintiff questioned the size of the requested fee, that he was not certain what his rights or obligations were and that his attorney was not being responsive to his inquiries. Plaintiff also indicated he had contacted the Attorney Fee Staff of the Social Security Administration and the Erie County Bar Association without substantial clarification of these issues. Perhaps most potentially troubling was plaintiff's indication that the attorney had in some way pressured him to remit funds or to acquiesce in certain conditions concerning payment of the attorney's fees. For example, in the January 19th letter plaintiff wrote:

"Due to the lack of knowledge that I have, and also against my own will, I have complied with all of [the attorney's] demands. I would be greatful [sic] and deeply appreciate your help concerning this matter in which I have been very helpless.

"The disabled American Veterans represented me through the first two years of my appeals. Although it proved fruitless, I had no other choice but to seek legal help and because I had no money, I

---

1. Although the references to plaintiff's attorney are in the singular, at least two members of the single firm worked on plaintiff's case.

2. The precise total is not clear from the record. The attorney's petition for fees fixed it as $20,620.60, but the February 1st affidavit of Jane B. Wolfe, Special Assistant United States Attorney, recites the Secretary's advice to her that $5,134.95 was being administratively withheld as 25% of the back benefits which implies that such benefits total $20,539.80.

had no choice but to sign this retainer with [the attorney]."

The retainer agreement to which plaintiff refers is dated October 28, 1983 and reads in pertinent part as follows:

"The client understands and acknowledges that the Social Security Administration may award a fee to the attorneys for the attorneys' services rendered by them before the Social Security Administration. The client understands and acknowledges that the fee awarded by the Social Security Administration reduces the amount the client receives in past due disability benefits. The client also acknowledges and understands that such payment in no way pays the attorney for the attorney's services rendered in the United States District Court for the Western District of New York. The client agress [sic] that he will pay to the attorneys for the attorneys' services rendered in the United States District Court of the Western District of the State of New York an amount equal to twenty-five (25%) percent of the total amount of past due Social Security disability benefits finally awarded for the client and all members of the client's family as a result of the efforts of the attorney. The attorneys acknowledge that if they are awarded attorneys' fees by the Social Security Administration for work done on behalf of the client at Social Security Administration hearings, then they will deduct the amount paid directly by the Social Security Administration from the twenty-five (25%) percent fee owed by the client for services rendered in the United States District Court. As a result, the fee paid by the client will never exceed twenty-five (25%) percent of the total award for past due disability benefits. The client acknowledges and understands that he may receive his past due disability benefits in two separate checks. The client agrees that at the time of the receipt of his first check from the Social Security Administration for past due benefits, the client will deposit twenty-five (25%) percent of the total award into an escrow account for the protection of the attorneys' fees until such time as all past due benefits are released by the Social Security Administration."

The attorney, apparently acting pursuant to the retainer agreement but apparently also over his client's objections,[3] had on December 21st persuaded plaintiff to pay him $5,154.81 which was put in an escrow account in plaintiff's name. This amount represented plaintiff's attorney's calculation of 25% of the total award of back benefits. However, because the Secretary, as is routinely the case, was already withholding 25% of plaintiff's award to provide a fund for potential attorney fee claims, plaintiff was left with only half of his award although no determination had yet been made as to what fees might be appropriate. Moreover, plaintiff has indicated that the attorney called him January 18th and requested that plaintiff sign a document releasing the money from the es-

---

**3.** A follow-up letter dated January 1, 1985 from plaintiff to the Social Security Administration's Attorney Fee Staff reads in part as follows:

"Endless efforts proved fruitless trying to gain support, not to pay my lawyer at this time since Social Security was holding back 25% of my award for him. I called the Erie County Bar Association and told them that [the attorney] was demanding one third of the total money sent to me in December. They told me I had to pay [him] because I signed a retainer with him. In turn, the bar assoc. called [the attorney], which triggered [him] to call me. He told me, that if I had any further questions not to call anyone else but himself. Also, the very next day in my mail, I received a copy of 'Instructions For Using This Peti-tion' from [the attorney], underlining in * * * yellow marker as to reasons why I had to pay him. He also stated that I had to pay him as soon as I received my first check. He told me he could not justify the amount of work he had done to receive the 25% you were holding back as he said he had only done a couple of hundred dollars of work as far as Social Security was concerned. He also stated that Social Security had no say in what he gets paid because my case was at the Federal Court level, even though it didn't go to court. He also said he would not fill out an Attorney's Fee Request until I paid him and then he would send a letter to you, requesting release of the 25% to me in which I would receive it faster."

crow account. Plaintiff, after reportedly contacting the Attorney Fee Staff and being advised that releasing the escrow account would constitute an approval of the fee sought by the attorney, did not do so. On February 1st the Secretary, through the United States Attorney for the Western District of New York, filed a cross-motion objecting to plaintiff's attorney's petition for fees and requesting a permanent injunction prohibiting the attorney from using "the type of retainer agreements in question" and "an order that [the attorney] return to plaintiff any and all moneys taken from plaintiff, together with interest and an accounting." The government contended, among other things, that the retainer agreement on its face violated the Social Security Act and that plaintiff's attorney's petition for fees was defective.[4] On February 21st the attorney filed a Supplemental Affidavit to which was attached a xerographic copy of the services rendered portion of the earlier petition for fees, this time with hourly totals handwritten in the margin. The attorney now averred that 15.8 hours had been spent obtaining plaintiff's benefits. Accordingly the government entered into a stipulation with the attorney February 21st withdrawing its earlier motion and approving a fee of $1,250 as "reasonable and justifiable under the circumstances." The attorney agreed to revise his "retainer agreements in Social Security cases to eliminate any and all provisions relating to the direct taking and holding of monies in escrow accounts from client's back benefits award" and to refrain from setting up fee-protecting escrow accounts in such cases. The attorney sent plaintiff a letter dated February 20th referring to the pending discussions with the government and enclosing a check for $5,175.81 representing the amount held in escrow plus interest.[5] The letter further stated:

"After reviewing our time slips and our file for the services we rendered to you and discussing the time and services with the United States Attorney's Office, we have agreed with them that a reasonable fee would be $1,250, which was computed at an hourly rate of $75 per hour.[6] If this meets with your approval, then a stipulation for payment of attorney's fees in the amount of $1,250 would be submitted for approval. If this meets with your approval, please you and your wife sign the enclosed copy of this letter and return it to me immediately."

Plaintiff and his wife signed the letter February 21st, although it is questionable whether such signature was an endorsement of the indicated fee. Plaintiff challenged the fairness of such fee both before this Court February 28th, specifically stating that he did not approve of it, and by his March 5th letter to this Court in which he indicated that he had signed the earlier letter because he had misunderstood the extent to which the government had investigated the propriety of such an award and had inferred that the government had approved or validated it.[7]

This Court denied the parties' joint request that the petition for fees be adjourned from its scheduled February 25th hearing date. Instead, upon entertaining said motion and in consideration of all of the circumstances, an evidentiary hearing

---

4. The government pointed to the absence in the petition of any specific contemporary indication of hours spent on the case—*see e.g., New York Ass'n For Retarded Child. v. Carey*, 711 F.2d 1136, 1148 (2d Cir.1983)—, certain questionable claims in the petition, and the fact that the fee sought was far out of proportion to any reasonable fee for the services involved.

5. For reasons that are unclear, the attorney has submitted to this Court as an exhibit an uncashed check for $11.87 representing the credit balance from the escrow account. Assuming such has not already occurred, plaintiff's attorney is to reimburse to plaintiff said amount as well as any and all sums that may still be due on account of the escrow account within ten days of the entry of this decision.

6. It is not clear how such figure was reached inasmuch as the attorney contemporaneously attested to 15.8 hours work in connection with this matter.

7. Of course the ultimate responsibility for determining an award of fees in such circumstances remains with the cognizant court in any event.

was ordered to be held February 28th. Such hearing was held and interested parties were provided an opportunity to testify and to present evidence. Thereby the foregoing factual recitations were confirmed.

This case has raised significant questions about the Act's mechanisms for providing fees, such questions ranging from the propriety *vel non* of escrow accounts and/or retainer agreements to more general concerns whether its integral parts—whether the Secretary or the reviewing court determines the total amount of fees, when such determination or determinations are to be made, what is or are the quantitative limitations—can be said to function cohesively when viewed comprehensively.[8] Such questions, however, are not squarely before this Court at this time and have not been thoroughly briefed or researched or otherwise developed. They are not ripe for disposition in the present case. The problem at hand may be resolved without reaching such fundamental issues regarding the Act, and therefore should be.

The attorney's conduct herein is to be condemned, quite aside from the Act's specific provisions. It was unconscionable for example, that the attorney should insist that the escrow account be funded at a time when the Secretary had already withheld 25% of past-due benefits and thus was protecting the attorney's fee. The attorney's argument—made at the evidentiary hearing—that the withholding of money in the escrow account does not prejudice the client because the account is interest-bearing ignores the fact that, in this and many other Social Security cases, liquidity of funds may be crucial to the making of certain immediate and necessary purchases. The entering into a retainer agreement whereby the fee is fixed at 25% of the litigative gains, rather than specifying that the fee would be fixed by the agency and reviewing court is facially overreaching.

The sheer size of the fee initially sought by the attorney and his failure to adequately examine into and respond to his client's legitimate questions represent severe breaches of an attorney's responsibility to his client. *See e.g.* paragraph EC2–23 of Canon 2 and paragraph DR2–106(A) of the Disciplinary Rules as embodied in Code of Professional Responsibility which is found in the Appendix to New York's Judiciary Law. In this case the attorney has sought more than $5,000 for work which he acknowledges required no more than 15.8 hours, in support of which he has not submitted contemporarily maintained appropriately detailed time records, in a case involving minimal effort on the part of the attorney and posing only routine issues of law. By persisting in the application for fees without resolving questions that could and should have been handled without this Court's intervention, the attorney has caused his client considerable and unnecessary inconvenience. Due to the attorney's gross overreaching, his alarming neglect in responding to and protecting his client and his failure to have presented contemporarily maintained time records, no fee is warranted.[9] Accordingly, it is hereby

ORDERED that plaintiff's attorney's petition for fees is denied.

---

**8.** "Perhaps no other section of any law has caused more misunderstanding, mistrust, and bad feeling between members of the Bar and [the Department of Health and Human Services] than the fee limitation provision which limits the amount of fees an attorney may charge or collect in a Social Security proceeding." H. McCormick, *Social Security Claims and Procedures* (3rd Ed.) § 763.

**9.** If the Secretary continues willing to pay the attorney $1,250 or any other amount from a source other than this plaintiff's money, she may do so. Such could assumeably be accomplished under the aegis of the Equal Access to Justice Act and without an order from this Court.